cat / div _2255/FTL_
Case # _____

Judge _JEM_ Mag _PAW_  UNITED STATES DISTRICT COURT
Motn Ifp _No_ Fee pd $ _No_ SOUTHERN DISTRICT OF FLORIDA
Receipt # _____ FT. LAUDERDALE DIVISION

FILED BY ____ _MB_ ____ D.C.

2014 JUN 19  PM 1: 08

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.-FTL

RUSSELL G. MACARTHUR, JR.,  )
                            )
        Movant,             )
                            )
v.                          )   Case No.  0:05-cr-60203-JEM-1
                            )
UNITED STATES OF AMERICA,   )   **14-cv-61421-Martinez/White**
                            )
        Respondent.         )
                            )

## MOVANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255(f) (3) TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, RUSSELL G. MACARTHUR, JR. ("MacArthur"), appearing *pro se*, and in support of his Motion shows as follows:

### I.    JURISDICTION

Jurisdiction is vested in this Court under 28 U.S.C. § 2255(f)(3). Under 28 U.S.C.A. § 2255, federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may move the district "court which imposed the sentence to vacate, set aside, or correct the sentence", 28 U.S.C.A. § 2255(a). Section 2255(f) imposes a one year limitations period upon the filing of § 2255 motions, which usually runs from "the date on which the judgment of conviction becomes final", 28 U.S.C.A. § 2255(f)(1). Section 2255(f)(3), however, provides that the one year limitations period begins to

run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review", 28 U.S.C.A. § 2255(f) (3), as seen in *Dodd v. United States,* 545 U.S. 353, 357-58 (2005), holding that the one year limitations period runs "from the date on which the right . . . was initially recognized by th[e] [Supreme] Court".

## II. <u>STATEMENT OF THE GROUNDS FOR REVIEW</u>

A.    Whether counsel misinformed MacArthur of the amount of time he could receive thus violating his Sixth Amendment right to effective assistance of counsel.

B.    Whether, in light of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), MacArthur's sentencing enhancements for prior convictions, possession of a firearm and a career criminal offender status were illegal under the Sixth Amendment and his sentence should be vacated for re-sentencing.

C.    Whether the Court erred in convicting MacArthur without using the modified categorical approach held in *Descamps v United States*, a 2013 Supreme Court case.

D.    Whether counsel failed to investigate and perform certain pretrial functions therefore providing ineffective assistance of counsel.

## III.   <u>STATEMENT OF THE CASE</u>

A.   <u>Relevant Procedural Background</u>

On August 11, 2005, a grand jury sitting in the Southern District of Florida returned a twenty five (25) count criminal Indictment against MacArthur and seven (7) other defendants. The indictment charged MacArthur with one (1) count of conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349 (Count 1), two counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts 8-9), three (3) counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 18-19, 21), and one count of criminal contempt, in violation of 18 U.S.C. § 401(3)(Count 25) (Doc. 3).   *Id.*

On June 7, 2007, MacArthur entered a plea of Not Guilty (Doc. 378).

On July 19, 2007, a federal grand jury returned a Superseding Indictment against MacArthur that added a co-defendant and that brought the same charges against him, but in renumbered counts. In the superseding indictment, the conspiracy charge remained Count 1, the mail fraud charges became Counts 3-4, the wire fraud charges became Counts 11-13, and the criminal contempt charge became Count 17 (Doc. 402). On July 20, 2007, MacArthur enters a Not Guilty plea to the Superseding Indictment (Doc. 406).

On February 28, 2008, pursuant to a written plea agreement, MacArthur pled guilty to conspiracy (Count 1), mail fraud (Count 4), and criminal contempt (Count 17)

(Doc. 506). On May 20, 2008, the district court sentenced MacArthur to 281 months in prison, three years of supervised release, and ordered him to pay $19,617,947 in restitution (Doc. 570).

On May 22, 2008, MacArthur filed his notice of appeal (Doc. 572). On June 16, 2009, the USCA affirmed the District Court's ruling (Doc. 623).

B.     Relevant Facts

In the spring of 2003, Russell MacArthur Jr., and Anthony Rocco Andreoni created American Entertainment Distributors, Inc. ("AED"). AED sold DVD vending machines to the public. For approximately $28,000 to $40,000 per machine, AED promised to deliver to the purchaser a "Box Office Express" vending machine, place the machine in a high-traffic location, and provide customer service. In its advertisements AED claimed that renting movies and video games at these vending machines would be more convenient for consumers than going to a video store. MacArthur left the business in the spring of 2004 after falling out with Andreoni. The end of the company's operations was in September 2004.

AED was a typical operation in which "fronters" would read from a script describing the business opportunity and then send a promotional brochure to prospective purchasers. This was followed by a telephone call with a "closer" who

used a different script to convince the prospective purchaser to deposit funds with AED. AED sales representatives encouraged prospective purchasers to call certain references who were said to be prior AED purchasers. AED employees also acted as "loaders" who would attempt to try to convince purchasers to buy additional machines during the period before the purchaser had received his or her original machine.

MacArthur along with other codefendants wrote the initial sales script used by AED's sales representatives. These sales scripts contained numerous misrepresentations and material non-disclosures, including: exaggerating the income that purchasers could expect to earn from the machines; the level of location assistance that AED would provide; the quality of the locations that AED would find for purchasers' and the level of customer support that AED would provide to its purchasers. In addition to writing the initial sales script, MacArthur hired some of AED's sales staff, negotiated the lease for AED's office space, and solicited individuals who had not purchased DVD vending machines from AED to become references for AED. MacArthur made loading telephone calls during which he convinced AED purchasers to buy additional DVD vending machine business opportunities. MacArthur concealed from prospective AED purchasers his own involvement in AED and the fact that a 2003 federal court order permanently

prohibited him from directly or indirectly, advertising, marketing, promoting, offering for sale, or selling any business venture.

MacArthur was sentenced to a total of 281 months in prison. His brother, James MacArthur, who was president of AED, received a sentence of 121 months in prison and was ordered to pay $12,029,198.06 in restitution. James MacArthur was the president of AED from its beginning to its end. James MacArthur provided the Better Business Bureau ("BBB") of Southeast Florida with paperwork that falsely stated AED had been established in August 2002, thereby appearing to satisfy the BBB's requirement that its members have been in business for at least one year. AED sales materials heavily promoted the company's membership in the BBB to create the veneer of legitimacy. James MacArthur was in charge of the company's day-to-day operations. He signed all the purchase orders and many of the checks. James MacArthur was familiar with AED sales scripts, knew AED's references were phony, and was aware of customer complaints.

MacArthur had a prior criminal history including: grand larceny at age 26; insurance fraud at age 28; grand larceny at age 30; and petty larceny at age 31. In addition, MacArthur was subject to a prior court order that prohibited him from participating in activities such as AED.

At sentencing defense counsel argued that MacArthur should only be held accountable for the amount of fraud and the number of victims resulting from his conduct and not the conduct of others that occurred after he left the business. The District Court rejected this argument finding that it was foreseeable that the conspiracy would continue after MacArthur departed and that there would be additional victims and losses.

Finally, the defense argued that a sentence based upon the guidelines would result in unwarranted disparity citing to the sentences given to the other co-conspirators and defendants in other cases.

## IV. COGNIZABLE ISSUES UNDER § 2255

The function of a § 2255 Motion to Vacate, Set Aside, or Correct Sentence is to inquire into the legality of the federal prisoner's detention as seen in *Heflin v. United States*, 358 U.S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition of length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States" and is of constitutional magnitude which has a substantial and injurious effect or influence on the proceedings held in *Brecht v. Abrahamson*, 507 U.S. 619, 637; *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); also *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994); (2) "that the court was without jurisdiction

to imposed such sentence." If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside as shown in *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), cert. denied, 439 U.S. 998 (1978). To warrant relief for a non-constitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure, held in *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.) cert. denied, 116 S.Ct. 1701, 134 L. Ed. 2d 800 (1996); (3) "that the sentence was in excess of the maximum authorized by law"; or (4) " that the sentence is otherwise 'subject to collateral attack,'" 28 U.S.C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice," shown in *Davis v. United States*, 417 U.S. 333, 346 (1974).

In § 2255 proceedings, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall grant a prompt hearing thereon, determine the issues, and make findings of face and conclusions of law with respect thereto," per 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, and that a credibility determination is

8

necessary in order to resolve the issue. Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief, as seen in *Andrews v. United States*, 373 U.S. 334, 339 (1963).

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions, see *Strickland v. Washington*, 466 U.S. 668 (1984). As such, ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension, held in *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland*, supra. The Sixth Amendment also entitles a defendant to the assistance of counsel at every critical stage of criminal prosecution, held in *Kirby v. Illinois*, 406 U.S. 682, 690 (1972). Critical stages are those steps of a criminal proceeding that hold significant consequences for the accused, seen in *Bell v. Cone*, 535 U.S. 685, 695-96 (2009). Thus, a defendant at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding, held *Coleman v. Alabama*, 399 U.S. 1, 9 (1970).

To prevail on an ineffective assistance of counsel claim, Goodman must show: (1) that his "counsel's representation fell below an objective standard of reasonableness; and (2) "that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different," according to *Strickland v. Washington*, 466 U.S. 668, 688, and 694 (1984). The first *Strickland* requirement is commonly called the "performance" prong and the second is called the "prejudiced" prong, see *Strickland*, 466 U.S. at 687. Further, Goodman must show that counsel's errors were prejudicial and deprived him of a "fair trial", or in other words, a trial whose result is reliable.

The familiar two-part test of *Strickland* referenced above has been applied by the Supreme Court and the Seventh Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance in all phases of the proceedings. Defendants can raise ineffective assistance claims concerning performance before trial *Kimmelman v. Morrison*, 477 U.S. 365, 371-79, performance during trial, *Strickland*, 466 U.S. at 686, 87, and performance at sentencing, *Glover v. United States*, 531 U.S. 198 (2001).

If counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," the adversarial process itself becomes presumptively unreliable as seen in *United States v. Cronic*, 466 U.S. 648, 659 (1984).

# V. **ARGUMENT**

## A.    **Counsel grossly misinformed MacArthur of the amount of time he could receive thus violating his Sixth Amendment right to effective assistance of counsel.**

Counsel clearly misinformed MacArthur of the amount of imprisonment he could receive by entering a plea of guilty. During plea negotiations counsel, failed to properly advise his client of the maximum term of imprisonment he could face by accepting the plea bargain. Neither did he adequately bargain for the best deal he could get for MacArthur, as seen in the conditions and factual basis of the plea agreement.

With respect to the right to effective counsel in plea negotiations, a proper beginning point is to discuss two cases considering the role of counsel in advising a client about a plea offer and an ensuing guilty plea: *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); and *Padilla v. Kentucky*, 559 U.S. 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

*Hill* established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland.* The Missouri Court of Appeals, applying the two part test in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) determined first that defense counsel had been ineffective and second that there was resulting prejudice.

In *Hill,* the decision turned on the second part of the *Strickland* test. There, a

defendant who had entered a guilty plea claimed his counsel had misinformed him of the amount of time he would have to serve before he became eligible for parole. But the defendant had not alleged that, even if adequate advice and assistance had been given, he would have elected to plead not guilty and proceed to trial. Thus, the Court found that no prejudice from the inadequate advice had been shown or alleged.

In *Padilla,* the Court again discussed the duties of counsel in advising a client with respect to a plea offer that leads to a guilty plea. *Padilla* held that a guilty plea, based on a plea offer, should be set aside because counsel misinformed the defendant of the consequences of the conviction. The Court made clear that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."

In *Strader v. Garrison,* 611 F.2d 61, 65 (C.A.4 1979), "[T]hough parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel". Incompetent advice distorts the defendant's decision making process and seems to call the fairness and integrity of the criminal proceeding itself into question.

In *Strickland*, 466 U.S., at 686, 104 S.Ct. 2052, the court states "In giving

meaning to the requirement [of effective assistance of counsel], we must take its purpose—to ensure a fair trial—as the guide". When a defendant opts to plead guilty without definitive information concerning the likely effects of the plea, the defendant can fairly be said to assume the risk that the conviction may carry indirect consequences of which he or she is not aware. That is not the case when a defendant bases the decision to plead guilty on counsel's misrepresentation of a consequence of the plea bargain. It seems hard to say that the plea was entered with the advice of constitutionally competent counsel—or that it embodies a voluntary and intelligent decision to forsake constitutional rights.

Counsel convincingly persuaded MacArthur, with ill-advised information, to accept the plea agreement offered by the government. Counsel led MacArthur to believe that his sentence would be significantly less. In all actuality that should have been the case, but counsel knew of the possibility of the government filing a Notice of Intent to Use Prior Convictions to Enhance Punishment, leading to a greater sentence. Due to disinformation, counsel provided ineffective assistance.

**B.      Whether the Court erred by enhancing MacArthur's sentence with facts that weren't found to be true or listed in the Indictment as addressed in *Alleyne v. United States*, 133 S. Ct. 2151 (2013).**

Since MacArthur's Judgment was entered, the United States Supreme Court decided *Alleyne v. United States*, 133 S.Ct. 2151 (2013). The Court in *Alleyne* overruled *Harris v. United States*, 536 U.S. 545 (2002) and concluded that:

> "Any fact that by law increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is a 'element' that must be submitted to the jury."

In *Alleyne*, the Court addressed Allen Ryan Alleyne's ("*Alleyne*") conviction. The jury verdict in that case indicated that *Alleyne* had "used or carried a firearm during and in relation to a crime of violence, but did not indicate a finding that the firearm was brandished." *Alleyne*'s presentence report recommended a seven year minimum sentence on the § 924(c) count for brandishing a firearm, in accordance with § 924(c) (1) (A) (ii). Also, the district court sentenced Alleyne to seven (7) years imprisonment, despite his objection that "raising his mandatory minimum sentence based on a sentencing judge's findings that he brandished the firearm" violated his Sixth Amendment right to a jury trial. The Fourth Circuit affirmed, noting that *Alleyne*'s argument was foreclosed by *Harris*. The Supreme Court ultimately overruled *Harris*, noting it could not be reconciled with *Apprendi v. New Jersey*, 530 U.S. 466,

14

120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In doing so, the Court recognized that *Apprendi* both "concluded that any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime" and held that the "Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt." Because a fact triggering a mandatory minimum impacts the prescribed sentencing range, it follows, then, that a "fact increasing either end of the [sentencing] range produces a new penalty and constitutes an ingredient of the offense." Facts that increase the legally prescribed floor "aggravate" the punishment and, as the Court opined, these facts must therefore be submitted to the jury and found beyond a reasonable doubt, in accordance with the Sixth Amendment.

In this case, MacArthur's sentence was enhanced for prior convictions as recommended by the government. The Presentence Investigation Report ("PSR") stated that MacArthur's prior convictions, warranted enhancement. No enhancements were alleged in the Criminal Indictment.

On June 9, 2012, the Supreme Court decided *DePierre v. United States*, 131 S.Ct. 2225, 2237 (2011). In *DePierre*, the Court stated that a district court can only consider a penalty enhancement if it had been charged in the indictment and/or proven beyond a reasonable doubt to the jury. If that finding is not part of the record of conviction, *DePierre* holds that the defendant has not been convicted of that fact.

At the time of MacArthur's conviction, it was well settled case law (prior to *Apprendi*), that an enhancement could not be used to increase a mandatory minimum and/or maximum sentence. Nevertheless, in conformity with standard practice adopted by district courts following the promulgation of the United States Sentencing Guidelines ("U.S.S.G."), the government recommended that the sentencing judge enter a finding for a sentence greater than that of the guideline settings. The Court adopted the government and Probation Office recommendations listed in the PSR.

Under 28 U.S.C. § 2255(f)(3), MacArthur must file his claim within one year of June 17, 2013, the date on which *Alleyne* was decided. *Dodd v. United States*, 545 U.S. 353, 354-355 (2005), held that the date from which § 2255 Motion's period of limitations begins to run is the date on which the right is initially recognized by the Supreme Court, not the date on which the right is made retroactive.

"*Alleyne* establishes a new rule of constitutional law," according to *Simpson v. United States*, 721 F.3d 875 (7th Cir. 2013). A rule is new if "the result was not dictated by precedent existing at the time the defendant's conviction becomes final," as held in *Teague v. Lane*, 489 U.S. 288, 301 (1989). When a conviction is final, a "new rule" announced by the Supreme Court only applies if it is a substantive rule as shown in *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). A substantive rule is on that "decriminalize[s] a class of conduct [or] prohibit[s] the imposition of [certain]

punishments on a particular class of persons," according to *Saffle v. Parks*, 494 U.S. 484, 494 (1990). *Schriro* also held that these substantive rules are applied retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal [or] faces a punishment that the law cannot impose upon [him]."

Because *Alleyne* is a statutory interpretation, there should be no issue of retroactivity being granted according to *Fiore v. White*, 353 U.S. 225 (2001). In *Fiore*, the Supreme Court explained that where a state's highest court for the first time interprets a criminal statute to require proof of a particular element and that interpretation does not create new law, but merely clarifies what the law was at the time of a defendant's conviction; there is "no issue of retroactivity."

*Alleyne* is a "watershed rule' of criminal procedure according to *Saffle*, 494 U.S. at 495. The portion of *Alleyne*'s holding that requires juries, and not judges, to find certain facts, is procedural, and thus subject to *Teague*'s two limiting principles in *Teague*, 489 U.S. at 312. The new rule must promote both accuracy and implicate fundamental fairness.

In *Summerlin*, the Court held that the empirical evidence was just too equivocal to say that judicial fact finding diminishes accuracy. "For every argument why juries are more accurate fact finders, there is another why they are less accurate." The Court

went on to note that its reasoning was further bolstered by its pre-*Teague* decision in *DeStefano v. Woods*, 392 U.S. 631 (1968) (per curiam), wherein the Court refused to give retroactive application to *Duncan v. Louisiana*, 391 U.S. 145 (1968) (right to jury trial). "If under *DeStefano* a trial held entirely without a jury was not impermissibly inaccurate, it is hard to see how a trial in which a judge finds only aggravating factors could be" as held in *Schriro*, 542 U.S. at 357.

With that, *Schriro* laid to rest the idea that new rules of criminal procedure which implicate jury trial rights should be applied retroactively. What *Schriro* did not do, however, is address *Alleyne*'s dual-faceted holding, vis-à-vis, any fact that increases the mandatory minimum sentence must be proved beyond a reasonable doubt, and not by a preponderance of the evidence standard. In *Schriro*, 542 U.S. at 351 n. 1, because Arizona law already required aggravating factors to be proved beyond a reasonable doubt that aspect of *Apprendi* was not at issue. Therefore, the identity of the fact finder (i.e., judge or jury) is not at issue. Rather, it is the indispensable nature of the reasonable doubt standard, for it "impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue," according to *Winship* 397 U.S. 358, 364 (1970).

The question then, as *Schriro* asks, is whether the absence of the reasonable doubt standard "so seriously diminish[es] accuracy that there is an impermissibly large

risk of punishing conduct that the law does not reach" as stated in *Schriro*, 542 U.S. at 355-56.

The reasonable doubt standard plays a vital role in the American Scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. That standard provides concrete substance for the presumption of innocence. That bedrock axiomatic and elementary principle, whose enforcement lies at the foundation of the administration of our criminal law, is that a person accused of a crime would be at a severe disadvantage to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence that would suffice in a civil case. This is supported in *Winship*, 397 U.S. at 363.

Moreover, and consistent with *Schriro*'s reliance on pre-*Teague* precedent, namely, *DeStefano*, to undercut the view that the jury trial right should be given complete retroactive effect, it should be noted that in a succession of cases, the Supreme Court has given complete retroactive effect to *Winship*'s reasonable doubt standard in *Ivan V. v. City of New York*, 407 U.S. 203 (1972) and *Hankerson v. North Carolina*, 432 U.S. 233 (1977). As *Winship* so aptly demonstrates, "the major purpose" of its rule was to promote both accuracy and accord fair treatment, in *Ivan V.*, 407 U.S. at 204-05.

19

*Alleyne* has "altered our understanding" of the bedrock procedural elements essential to the fairness of the proceeding as held in *Sawyer v. Smith*, 497 U.S. 227, 242 (1990). Before *Alleyne*, it was universally accepted that facts which increase the minimum sentence did not run afoul of any constitutional guarantee. *Alleyne*, however, brought down Thor's hammer on the source of that universal acceptance, *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), and its progeny, *Harris v. United States*, 536 U.S. 545 (2002), and reduced them to ash. It therefore cannot be reasonably argued that *Alleyne*'s holding works only an incremental change in criminal sentencing. Compare with *Beard v. Banks*, 542 U.S. 406, 420 (2004); *O'Dell v. Netherland*, 521 U.S. 151, 167 (1997); *United States v. Sanders*, 247 F.3d 139, 150.

Nor can it be any longer argued that the error here does not taint the entire case because it merely concerns the "omission of only one 'element' of the offense, for example drug quantity" according to *Sanders*, 247 F.3d at 149. *Alleyne* makes abundantly clear, facts that increase the mandatory minimum sentence, "constitutes a new, aggravated crime." And in the vast majority of those cases, defendants are routinely convicted and sentenced above their mandatory minimum sentence based on two, three, or four facts (i.e., elements that were neither charged nor submitted to the jury continued). Compare *Neder v. United States*, 527 U.S. 1, 1 (1999) the harmless error analysis feasible where erroneous instruction omitted only one "element of the

20

offense"; *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003), with *United States v. Miller*, 372 Fed. Appx. 358 (4th Cir. 2010) in applying enhancements in excess of mandatory minimum sentence for leadership, obstruction, and career offender provisions, and *United States v. Robinson*, 2008 U.S. App. Lexis 18309 (5th Cir. 2008) in applying leadership and obstruction enhancements. By all accounts, these types of errors are "necessarily unquantifiable and indeterminate" held in *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). As such, they can no longer be cast aside.

Thus, *Alleyne*'s procedural rule, vis-à-vis, any fact that increases the mandatory minimum penalty must be found by a jury beyond a reasonable doubt, has worked a "sweeping change" in the way that men are tried and sent to prison as stated in *Whorton v. Bockting*, 549 U.S. 406, 421 (2007). To prove the point one need only look to the temporal journey culminating into *Alleyne*'s new rule. Compare to *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008) which states "The source of a 'new rule' is the Constitution itself, and not any judicial power to create new rules of law. Accordingly, the underlying right necessarily pre-exists our articulation of the new rule." The rule was first identified in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), it did not apply to state capital sentencing schemes as seen in *State v. Ring*, 200 Ariz. 267 (2001). However, it was later applied to state capital sentencing schemes in *Ring v. Arizona*, 536 U.S. 584 (2002). It was again applied to state sentencing guidelines in *Blakely v.*

21

*Washington*, 542 U.S. 296 (2004). After that, it was applied to the United States Federal Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005). Later, the rule was applied to criminal fines in *Southern Union Company v. United States*, 132 S.Ct. 2344 (2012). And finally, the rule was applied to mandatory minimum sentences as seen in *Alleyne*, supra.

Thus, *Alleyne*'s animating principles on its temporal journey, has effected a profound change, the likes of which have not been seen since the coronation of *Gideon v. Wainwright*, 372 U.S. 335 (1963). It is for these reasons that *Alleyne* compels all the primacy and centrality that Gideon commands. Accordingly, *Alleyne* retroactive by the Supreme Court and should be applied in this case.

"Under our vaunted legal system, no man, however bad his behavior may be can be convicted of a crime for which he was not charged, proven, and found guilty of or admitted to, in accordance with due process" as held in *Parr v. United States*, 363 U.S. 370, 394 (1960). In sum, it is possible to view the consequences of this error in one of two ways: (1) MacArthur was improperly sentenced to a greater penalty than the one authorized by Congress for the crime of which he was convicted; or (2) MacArthur was improperly convicted because the crime of conviction was not fully alleged in the Indictment or found beyond a reasonable doubt by the jury.

Viewing the error as an error in sentencing, the prejudice is clear. The facts alleged in the Indictment and found beyond a reasonable doubt by the jury and the pre-*Booker* mandatory guideline sentencing system should have yielded a lower offense level. Nonetheless, at sentencing, the judge was the deciding factor in that he found that an enhanced sentence based on the recommendation of the government and Probation Office was appropriate. In essence, the Court constructively amended MacArthur's Indictment when the Court sentenced MacArthur to two-hundred-eighty-one (281) months. Because MacArthur's enhanced sentence was based on the PSR, the government's recommendation and not listed in the Indictment, it violated MacArthur's Sixth Amendment right according to *Alleyne* and its predecessors.

With regard to prejudice, the Court's error affected MacArthur's substantial rights and increased his sentence to a significantly harsher sentence which actually prejudiced him under the Sixth Amendment according to *Glover v. United States*, 531 U.S. 198 (2001) stating, "any amount of actual jail time has Sixth Amendment significance." Accordingly, MacArthur's sentence should be vacated for resentencing.

**C.   The Court erred in convicting MacArthur without using the modified categorical approach held in *Descamps v United States*, a 2013 Supreme Court case.**

The District Court's ruling in this manner was completely erroneous by a overwhelming amount of evidence. MacArthur's case closely resembles the situation in *Descamps v United States*, 466 Fed. Appx. 563 reversed, from the enhancements to his prior convictions. Clearly this is an error by the court as *Descamps* has now become retroactive.

The case was decided 8-1 with the Honorable Justice Elena Kagan writing the majority opinion. The enhancements provide for additional penalties for those who have been convicted before of crimes, and the case revolved around conflicts between state and federal definitions of burglary. The court made conviction with enhancements more difficult by striking down the modified categorical approach for crimes with a single and indivisible set of elements. At no time should the Court refuse to consider any evidence which may acquit or decrease the amount of punishment handed out during sentencing.

In the past year, the Supreme Court decided the matter of *Descamps v. United States*. In *Descamps,* Supreme Court 11-9540, the Supreme Court demands that when calculating sentencing guidelines that all Courts must be most specific when judging sentence levels based upon prior convictions. The Court made conviction with

24

enhancements more difficult by striking down the former modified categorical approach for crimes with a single and indivisible set of elements as well as enhancing a defendant without adhering to the modified categorical approach to sentencing. No longer can a court say that violations are all the same when it concerns prior sentencing and in determining a criminal history level. The Supreme Court's decision in *Descamps* scolded the Ninth Circuit for not only had the Ninth Circuit ignored the focus on a prior "conviction" rather than the underlying conduct, but its licensing of judicial fact finding "beyond the recognition of a prior conviction" raised precisely the Sixth Amendment problem that the categorical approach had been designed to avoid. Finally, the Ninth Circuit's approach would regularly create practical difficulties for courts trying to figure out what "a defendant admitted in a plea colloquy, or a prosecutor showed at trial," an unfairness for the defendant who had not bothered to contest a (then) legally irrelevant factual allegation.

In the instant matter it was clearly evident that MacArthur had prior convictions. Counsel did not object to MacArthur being enhanced by prior convictions. MacArthur did not clearly understand that he would be enhanced and counsel should have fought harder for him not to have been. MacArthur didn't receive the minimum recommended sentence, but instead the court sentenced him to the high end of the guideline setting.

Simply stated, the prior convictions for which MacArthur was held responsible and given a higher criminal history level should be removed from the sentencing calculation and as a result MacArthur's case should be reexamined, recalculated and a lower sentencing should be awarded.

**D.** **Counsel failed to investigate and perform certain pretrial functions therefore providing ineffective assistance of counsel.**

The right of an accused to counsel is beyond question a fundamental right. For example *Gideon*, 372 U.S., at 344, states that, "The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours". Without counsel the right to a fair trial itself would be of little consequence, as seen in *Cronic*, supra, at 653; *United States v. Ash*, 413 U.S. 300, 307 -308 (1973); *Argersinger v. Hamlin*, 407 U.S. 25, 31 -32 (1972); *Gideon*, supra, at 343-345; *Johnson v. Zerbst*, 304 U.S. 458, 462 -463 (1938); *Powell v. Alabama*, 287 U.S. 45, 68 -69 (1932), for it is through counsel that the accused secures his other rights. *Maine v. Moulton*, 474 U.S. 159, 168 -170 (1985); *Cronic*, supra, at 653; see also, *Schaefer*, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956) which states that, "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." The constitutional guarantee of counsel, however, "cannot be satisfied by mere formal appointment," *Avery v. Alabama*, 308 U.S. 444,

446 (1940). *Strickland*, supra, at 685, says that, "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair". In other words, the right to counsel is the right to effective assistance of counsel according to *Evitts v. Lucey*, 469 U.S. 387, 395 - 396 (1985); *Strickland*, supra, at 477 U.S. 365, 378 686; *Cronic*, 466 U.S., at 654; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970).

Counsel was highly ineffective for failing to investigate and perform certain pretrial functions guaranteed to MacArthur by the Sixth Amendment right to effective assistance of counsel. Counsel should have expanded on the PSR's investigation to show that MacArthur's mental health and psychological issues influenced the way he behaved. *Wiggins v. Smith*, 539 U.S. 510, 535–38, 123 S. Ct. 2527, 2542–44, 156 L. Ed. 2d 471, 493–95 (2003), found the decision of counsel not to expand investigation of petitioner's life history for mitigating evidence beyond presentence investigation report and amounted to ineffective assistance. Counsel should have provided an expert witness on MacArthur's extensive mental health and psychological issues which would have shown how it affected his mentality at the time of the incident. Further investigation would have shown that mental health and psychological issues of MacArthur at the time of arrest gave cause for mitigating evidence.

Counsel also failed to conduct any discovery before the proceedings began and in failing to do so was negligent at trial. In *Kimmelman v. Morrison*, 477 U.S. 365, 385–91, 106 S. Ct. 2574, 2588–91, 91 L. Ed. 2d 305, 326–29 (1986), finding ineffective assistance of counsel where counsel failed to conduct any pretrial discovery. Counsel was completely ill prepared for any type of defense. Counsel made no type of discovery or investigation of his own. Perhaps, this is why counsel urged MacArthur to accept the preposterous plea agreement.

Due to the circumstances listed in the Indictment, counsel should have had MacArthur ordered to undergo psychiatric evaluation. In *Gersten v. Senkowski*, 426 F.3d 588, 609–15 (2d Cir. 2005), finding that attorney's failure to seek medical expert consultation for the defense or to investigate critical government evidence constituted ineffective assistance of counsel. Counsel should have provided a medical expert to evaluate MacArthur's mental state. MacArthur has suffered from Attention Deficit Hyperactivity Disorder ("ADHD"), Bi-Polar Disorder, and Manic Depressive Disorder. Clearly counsel didn't provide anything close to effective assistance of counsel and more than satisfied *Strickland's* two prong test.

Counsel failed to conduct any meaningful pretrial discovery, and thus was totally unaware that certain damaging evidence might have been the appropriate subject for a suppression motion. Counsel seems to have acted on the misapprehension

28

that the government was obligated to turn over anything that the defense might be interested in examining. Little else was offered by way of excuse by MacArthur's lawyer, except for counsel's rather remarkable attempt to justify his conduct. Based on the unmitigated negligence of MacArthur's counsel in failing to conduct any discovery, MacArthur was deprived of effective representation.

This case deals with a total failure to conduct pretrial discovery, and one as to which counsel offered only implausible explanations. Counsel's performance during critical stages, while generally creditable enough, suggests no better explanation for this apparent and pervasive failure to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Under these circumstances, although the failure of the District Court and the Court of Appeals to acknowledge counsel's overall ineffective performance, the conclusion that should be reached is that counsel's performance fell below the level of reasonable professional assistance in the respects alleged.

## CONCLUSION

For the above and foregoing reasons, MacArthur's conviction and sentence should be vacated for further proceedings. In the alternative, MacArthur respectfully requests that this Court hold an evidentiary hearing so that he may

further prove his meritorious grounds, resolve facts in dispute and expand an

incomplete record.

Respectfully Submitted,

_Russell MacArthur_
Reg. No. 78742-004
FCI Edgefield
P.O. Box 725
Edgefield, SC 29824
Appearing, *Pro Se*

## DECLARATION OF RUSSELL G. MACARTHUR, JR.

I, Russell G. MacArthur, Jr., declarant herein, declare and attest to the facts in the above and foregoing Motion under 28 U. S. C § 2255 (f) (3) to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U. S. C. § 1746.

DATED: June 11th, 2014

Russell G. MacArthur, Jr.

## Certificate of Service

I hereby certify that I mailed one copy of my Motion under 28 U. S. C § 2255 (f) (3) to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody with first class U.S. Postage prepaid and affixed thereon to the Office of the United States Attorney for the Southern District of Florida, Ft. Lauderdale Division.

June 11th 2014
DATE:

Russell G. MacArthur, Jr.



Russell MacArthur 78742-004 Unit B-7
EDGEFIELD Federal Correctional Institution Medicin
P.O. Box 725
EDGEFIELD, S.C., 29824-6725

⟨⟩78742-004⟨⟩
United States District
Clerk of Court Suite 108
299 E Broward B .VD
US District Court House
FORT Lauderdal·, FL 33301
United States

Legal Mail

⟨>78742-004⟨>
United States District
Clerk of Court Suite 108
299 E Broward B..VD
US District Court House
FORT Lauderdal·, FL 33301
United States

Federal Prison
PO Box 723
Edgefield, SC 29824

LEGAL/SPECIAL MAIL The enclosed letter
forwarded to you was processed through special
mail procedures. The letter was neither opened
nor inspected. If the writer raises a question or problem
over which this facility has jurisdiction, you may
wish to return the material for further information or clarification.
If the writer encloses correspondence for forwarding
to another addressee, please return enclosure to the
above address.

Initials _____

Date 6-19-14